UNITED STATES DISTRICT COURT

MITCHELL TODD GARDNER

LET THIS BE FILED

Signature _____

Date _____ 11/27/23

v.

CASE NO.: 21-CR-622(APM)

UNITED STATES OF AMERICA

MOTION FOR COMPASSIONATE RELEASE AND/OR
REDUCTION OF SENTENCE PURSUANT
18 U.S.C. § 3582 (c)(1)(A) & (c)(2)

***** ***** ***** ***** *****

COMES NOW, Petitioner, named in the above caption, in pro se capacity and in necessity.

The Petitioner presents the following motion requesting that the court would grant him the requested relief pursuant to 18 U.S.C. § 3582 (c)(1) & (2) also known as "compassionate release and/or reduction of sentence".

The Petitioner avers that he has merited claims that upon the courts review would find "extraordinary and compelling reasons" under the amended United States Sentencing Commissions

Guidelines, which broaden the requirements for having to meet extraordinary and compelling reasons.

The Petitioner also avers that in addition to having met "extraordinary and compelling reasons" that he also further qualifies for relief at the courts discretion pursuant to § 3582 (c)(2) for consideration of a reduction of his sentence due to the change in law in relation to the amendments to the calculation of sentencing guidelines made retroactive by sentencing commission, which have made new calculations to the guidelines that became effective as of November 1, 2023.

### *** U.S.S.G. AMENDMENTS TO THE SENTENCING GUIDELINES ***

The new sentencing commission dedicated themselves to making much needed change to address the many disparities that the previous guidelines had seemed to create. After meeting with several experts and committing themselves to hours of scientific research the U.S. Sentencing Commission decided to submit the following amendments to be made to several parts of the guidelines, this included "status points" under U.S.S.G § 4A1.1. as well as amendments to "Zero point offenders" levels.

The committee decided that the following amendments be made to the guidelines and be made "retroactive".

### ***Status Points***

"The commentary to §2p.1 captioned "Application Notes" is amended in note 5 by striking "§4A1.1(d)" and inserting "§4A1.1(e)".

Section 4A1.1 is amended–

by striking subsection (d) as follows:

"(d) Add 2 points if the defendant committed the instant Offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.",

by redesignating subsection (e) as subsection (d); and by inserting at the end the following new subsection (e):

"(e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.".

The U.S.S.C. went on to explain their position in making this amendment to the guidelines under "Reason for Amendment" stating that

"This amendment is the result of several Commission studies regarding the nature of the criminal history of federal offenders, including analyses of the number and types of prior convictions included as criminal history and the ability of the the criminal history rules to predict an offender's likelihood of rearrest. While these studies continue to recognize the close

association between an offenders criminal history calculation under the guidelines and the likelihood of future recidivism, the amendment makes targeted changes to reduce the impact of providing additional criminal history points for offenders under a criminal history points for offenders under a criminal justice sentence (commonly known as "status points"..."" ...[T]hese targeted amendments balance the Commissions mission of implementing data-driven sentencing policies with it's duty to craft penalties that reflect the statutory purposes of sentencing.".

### ***ZERO POINT OFFENDERS***

Likewise the sentencing Commission went on to express much needed changes that needed to be addressed as it related to Zero Point offenders.

The commission would go on to decide that all Zero Point criminal history defendants would be given a two level decrease which would also work towards healing disparities created by the sentencing guidelines and the statutory purposes in accordance with data driven information.

In accordance with the purpose and mission of the U.S.S.C., that admittedly has allowed for sentences to be greater than necessary as now realized through scientific research and evidence in combination with the retroactive change in law that went into effect on November 1, 2023 the petitioner sentence may

warrant a reduction based on the aforementioned sentencing guideline changes.

For these reasons the petitioner request that the court would take this motion under consideration and grant him relief for the following reasons laid out in the paragraphs below:

***JURISDICTION***

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §3582(c); see United States v. Malone, 57 F.4th 167, 173 (4th Cir. 2023); United States v. Bond, 56 F.4th 381, 383 ( 4th Cir. 2023); United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Ferguson, 55 F.4th 262, 267 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020); United States v. Jackson, 952 F.3d 492, 495 (4th Cir. 2020); United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 536, 131 S. Ct. 2685, 180 L. Ed. 2d 519 (2011). One such exception is when modification is expressly permitted by statute." 18 U.S.C. § 3582(c)(1) and (c)(2); see Jackson, 952 F.3d at 495.

Congress "broadened" the authority of the courts with the implementation of the First Step Act ("FSA"), Pub. L. No.

115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. §
3582(c)). This provision is an exception to the rule and provides
two statutory vehicles to modify a defendant's sentence when
"extraordinary and compelling reasons" exist as defined by the
U.S.S.G. and/or when retroactive changes have been made to the
sentencing guidelines.

Originally the first was only upon a motion by the
director of the Bureau of Prisons, which made a defendant rely on
the Director to petition the court if an extraordinary and
compelling reason did exist in order to receive relief. However,
congress determined that the Federal BOP as often is the case
rarely would use this vehichle to provide relief for those that
clearly presented "extraordinary and compelling reasons".

Now as a result of the FSA a federal defendant may now
enter a motion in on his own.

Although the language of the law requires that
administrative remedies exhaustion for relief under 3582(c)(1)(A)
it is not clear that exhaustion is needed for relief under
3582(c)(2) as the Federal BOP has no authority to modify a
sentence based on retroactive changes to the sentencing
guidelines.

The Petitioner avers that the court has jurisdiction
concerning this matter under 18 U.S.C. § 3582.

The First Step Act amended 18 U.S.C. 3582(c) to allow "incarcerated defendant's to seek compassionate release from the court on their own motion, not just through the Bureau of Prisons." United States v. Thorpe, 2019 U.S. Dist. LEXIS 200323, 2019 WL 6119214, at 1(C.D. Ill. Nov. 18, 2019); see 18 U.S.C. § 3582(c)(1)(A) ("[T]he court,... upon motion of the defendant...may reduce the term of imprisonment..."). This is provided if the defendant has exhausted his administrative remedies by first submitting a request to the warden.

Section 3582(c) permits the sentencing district court to reduce a defendants sentence "after considering the factors set forth in [18 U.S.C.]§ 3553(a) to the extent that they are applicable" the court may reduce a defendants sentence as long as it is "consistent with applicable policy statements issued by the sentencing commission." see United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021)

In addition the law requires that the sentencing court address the defendants 3582(c) petition; Barnes v. Jamison, no. 22-cv-00049, 2022 U.S. Dist. LEXIS 13577, 2022 WL 245478, at 2 (M.D. Pa. Jan. 25, 2022) (explaining that the district court did not have jurisdiction to grant the Section 2241 petitioner's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he was not sentenced in that district court).

The Petitioner in accordance with the statute has satisfied the exhaustion requirement as he has petitioned the Warden at his institution (Fort Dix-FCI) and was given no response in 30 days. This allows the court to retain jurisdiction in hearing the petitioners motion for compassionate release.

The petitioner further avers that this honorable court sentenced him on 03/16/2023 and thereby retains authority pursuant to this statute named above to grant him the requested relief should they find that the petitioner meets the standards set forth in the amended sentencing guidelines passed by the United States Sentencing Commission after having reviewed the necessary prerequisites to grant such relief to the petitioner pursuant to 3582(c)(2).

***REQUEST FOR APPOINTMENT OF COUNSEL***

"It is clear that a defendant does not have a constitutional right to the appointment of counsel when seeking compassionate relief." United States v. Dorsey, 520 F. supp. 3d 681, 683 (ED.Pa.2021).

Although the Sixth amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. United States V. Wade, 388 U.S. 218, 224, 87 S. Ct. 1926, 18 L. Ed. 2d 1149(1967). However, this right does not extend to post-conviction relief. The decision of whether to appoint counsel for the purpose of compassionate release and/or a reduction of sentence lies solely within this courts discretion.

The petitioner request that after this honorable court has considered the pleadings presented in this petition that the court would find that their is merit in this petition and would use it's discretion to grant him the appointment of counsel.

The petitioner avers that the amended guidelines are complex and that without the appointment of representation he could not present pleadings in a manner that would allow him access to all available rights granted to him by this change in law.

The petitioner nor his family at this time can afford to retain an attorney and their efforts after numerous attempts to find an attorney that would assist him as an indigent has repeatedly failed.

The Petitioner is well aware that their is nothing in the statute that requires the court to appoint him counsel nor entitles him to the right of counsel. However, the petitioner ask that the court would utilize it's discretion, as the court is entitled to do, to appoint him representation on this matter.

***BACKGROUND***

On March 16, 2023, the petitioner was sentenced to an imposed term of imprisonment for 55 months by the honorable Judge Mehta.

The petitioner in a good faith effort to preserve the court and the public both time and precious judicial resources accepted his role in the unfortunate actions that had taken place on January 6, 2021 by himself and so many other Americans when they were persuaded by then President Donald J. Trump that he had irrefutable evidence that he had been cheated by a "rigged election". This was supported seemingly by the countless hours of news sources, attorney's and public figures that claimed to "have the evidence" that the President had indeed been cheated.

The petitioner would go on to plead guilty before this honorable court as he came into the realization that he may have been used as a "tool" in this fraudulent scheme and would be sentenced for his role in violation of 18 U.S.C. §§ 111, 231(A)(3), and 1512(c)(2).

This case involves a large group of hard working red blooded Americans that through the influence of the President of the United States felt obligated to act on his behalf and what he (President Donald J. Trump) would sell as the "founding fathers" behalf in "saving the republic".

This influence by the President and so many other public figures lead to what would become the criminal actions taken by the petitioner on January 6, 2021.

It is clearly established that although "someone says it's true doesn't mean it is". However, in this case as stated above the "someone" was the then President of the United States, the most powerful man in the world who's influence had been realized and utilized to manipulate others in carrying out his missions while staying above the "fray". This was done while he influenced so many others including the petitioner to feel that it was an obligation or patriotic duty to ensure the saving of the republic and was an act of patriotism.

### ***SENTENCING AS A ZERO POINT OFFENDER***
### AND THE CHANGE IN LAW BY THE U.S.S.C.

When this honorable court sentenced the petitioner it requested as required by law that a presentence investigation be completed.

Upon the court completing it's investigation it found that the petitioner was a zero point offender for purposes of sentencing. The court decided that fifty-five (55) months which was appropriate.

As described within the body of this motion since the time of sentencing the U.S.S.C. has amended the guidelines and made those changes retroactive. The petitioner avers that as a result of these changes to the U.S.S.G he qualifies at the courts discretion for a two (2) point level deduction which would consequently significantly decrease his percentage of his imposed sentence.

It is for these reasons and the reasons embodied within this motion that the petitioner request that this honorable court would grant the reduction of sentence relief pursuant to 18 U.S.C. § 3582(c)(2).

***NATURE OF THE CRIME***

AND

IMPACT ON VICTIMS BOTH KNOWN AND UNKNOWN

The petitioner understands that the nature of his crimes against the United States despite having been mislead to believe that they were acts of patriotism at the time, is now in retrospect far from an act of patriotism and is a part of his life that will forever be a cloud of shame over his head.

It is important to express to the court that these actions were based on illusionary facts that were being perpetrated by not just the President of the United States but a collective of news orginizations, public officials, public figures that were all well respected at the time and seen as credible and reliable sources of information. It was not until much later and some would argue still even now that evidence begin to show that these reliable resources were part of a fraudulent scheme to influence hard working Americans to act in a manner that would "save the country".

Since carrying out these actions on January 6, 2021 the petitioner, unlike the "influencer(s)" that caused this revolt by utilizing false and misleading information, have since discovered that he was decieved into causing countless harm that he at the time in his state of mind was acts of patriotism caused so much harm to so many across this country. This would

include but not be limited actions he took which caused physical and emotional harm to innocent individuals that were charged with protecting the peaceful transfer of power through the historical procedures being carried out within the capitol building on the day of this event.

The actions of the petitioner and others caused the leadership of our country to be victimized in a manner that was unprecedented and will never be undone by any amount of regret and remorse that is felt everyday by the petitioner. The petitioner would like to express to every victim impacted by his misguided actions that it is not a day that he, the petitioner has not realized the impact that he has made on this country and the lives of so many others that were impacted by January 6, 2021 and categorically disavows the acts as patriotic in view of the fraud that has been discovered related to a "rigged election".

It is an understatement to state how remorseful the petitioner is for his actions on that day. The petitioner understands that his behavior was not commendable in any way and that their is never any excuse for acting in the manner in which he did on that day. The petitioner takes full responsibility for his own actions and will work hard to ensure that others will not be misled as he was into committing such atrocities.

It is for these reasons that during this period of incarceration the petitioner has worked hard to make amends for the role he personally played and the harm that he caused to these victims that were impacted by the January 6 riots.

The petitioner, as will be described throughout this motion has programmed tirelessly over the past year to rehabilitate himself and attempt to realize in what way he could somehow help to assist so many of these victims in their recovery. The petitioner has participated in over 15 classes aimed at improving himself and understanding "victim impact". Not only has the petitioner focused on these classes but have also worked to heal bridges between he and his family which because of these actions have had to adjust their own lives to living without a son, grandson, brother, father and etc.

### ***IMPACT ON THE PETITIONER AND HIS FAMILY***
### POST JANUARY 6, 2021

The petitioner throughout this time period although having to now face many that carry a grudge against him, which the petitioner fully understands he is solely responsible for, has to live with the fact that these actions he carried out on this day has caused an enormous negative impact on his family members who were in no way involved in his actions.

For example, since the petitioner has been arrested for these actions he has had to live with being the poster child for two very different views of american political society. It would be unrealistic to think that the petitioner would ever be able to himself live a normal life without even considering the impact that this has on his immediate family members such as his children whom was affected by this embarrassing moment in their father's life and has to now live with the results of the consequence of the petitioners misguided behavior despite not being involved at all in this decision.

The petitioner would have the court know that he has worked hard to provide for his children during this period of his life and has even went as far as selling his home and other properties to ensure that his victims were compensated as ordered by the court while also ensuring that his kids were given all financial support as he was obligated by the court to do.

***RELEASE PLAN***

The petitioner has a realistic release plan that involves moving to New York with his fiancee Ms. Kisook Kim where they will reside at a home in Whitestone, NY.. The petitioner has this release plan available for the court at it's request and can also provide the court with phone numbers to verify these claims. The petitioner's fiancee is currently employed and will ensure that the petitioner reintegrates back into society in a manner that will deter the petitioner from being misguided back into any criminal behaviors.

She (Ms. Kim) has lived at her residence and worked the same job since 2013 and 2014 respectively. The petitioner has purchased a vehicle to ensure that he will be able to make all necessary appointments that the court will require and has already made plans to purchase medical insurance upon his release to have access to medical treatment should it be necessary.

The court is aware of all the support that the petioner has returning back to the community and this support base will ensure that he has everything he needs to get back on his feet and sucessfully re enter back into society.

The petitioner has multiple job opportunities upon release as he intends to go back into roofing which was how he previously provided for himself before incaceration.

The petitioner intends to fully comply upon release to any and all conditions placed on him by the court and would fully be able to provide for himself transportation to and from any probation appointments that he may be required to go to.

In addition to this the court would also have the U.S. Probation services to ensure that the petitioner has complied with all court orders.

The petitioner has taken this time of incarceration to refocus his life and energy into postives by continuously reading self help books that has helped to regain his focus. These books include "Objections" by Jeb Blount, "Flipping the script" by Cobi Beal, The Intelligent Investor by Benjamin Graham, "Think and Grow Rich" by Napoleon Hill, "Secrets of a Master Closer" by Mike Kaplan, "Selling Solar" by Daniel Howson, "The Power of Habit" by Charles Duhigg, and "To Sell is Human" by Daniel Pink. These readings have been done by the petitioner so that he can return back to work upon release and be able to reintergrate back into his career.

The petitioners goal is to give his family the best support both financially and emotionally as possible. The petitioner understands the mental health treatment that he will require and that his family will need as well after the effects of living a post January 6 life.

He understands that not just he felt the impact made on the day

this took place but also his family although unaware were also made victims through this scheme due to the fraudulent evidence perpetrated by so many "reliable" public figures.

The petitioner, while incarcerated has unfortunately lost two very close family members, his grandparents that practically raised him throughout his childhood within a year. His Grandfather and Grandmother Philip and Joan Gardner Galion on January 8 of 2023 and then as well on November 3rd of 2023 as well. This has been devastating to both he and his family and the petitioner would ask the court to consider this as a future deterent of participating in any future criminal activity.

***THE 3553 (a) FACTORS AND THE PERSON WHOM IS NOW REQUESTING RELIEF***

Mr. Gardner, prior to this arrest was not some harden criminal that sought opportunities at breaking the law. For his entire life Mr. Gardner had been seen as a law abiding citizen that had worked hard to make a living for himself while whole heartedly supporting the rule of law.

There are times in an individuals life when they are torn between what's right and what's wrong and this was the situation with the petitioner. The petitioner while he has accepted full responsibility for his actions on January 6, 2023 was made to think that what he was doing was not criminal but rather patriotic. The mens rea factor of the petitioner must be examined in order for the court to adequately decide if the petitioner poses a danger to society in the future.

Mr. Gardner as the court is well aware went to the capitol on the

day of this incident with the mind set of saving the republic from what he
considered was some imaginary force that was set to destroy it.

In so many ways the mind set of the petitioner, although very
skewed by misinformation, was no different then the founding fathers mindset
when they met in Philadelphia to declare their independence from an
adversarial and tyrannical government.

Now it is easy for many to say how could he have listened to one
man and been so naive, but you have to consider that this was a collective of
individuals that were highly prominent that promoted this idea that the
government was under attack. These were individuals that the petitioner saw as
patriotic and integral and trusted the information they were giving was solid.
Unfortunately it was not and the information has since been proven at best
misleading. Remember that the petitioner saw this as something that was
happening in a manner that did not allow him to have the time to investigate
these accusations on his own. These individuals were made to think that they
had to act and act now without any hesitation or you were going to allow the
"republic to die".

Mr. Gardner outside of this incident where he assumed from
misinformation that he needed to act in this manner would still today be
considered a law abiding citizen that loves his country.

Mr. Gardner has never took an oath to defend this country from
enemies both "foreign and domestic" but he felt obligated by birth right to
defend this country if what he was told was true and he acted on this impulse

of patriotism not terrorism.

What Mr. Gardner was protecting in his mind was institutions just like the one he is currently petitioning for his release.

His mindset was not to overturn the government or the processes of this great country but to ensure it for generations to come.

The petitioner request that the court would consider this position and the mindset that drove the petitioner to act in such an embarrassing manner.

With this being said the petitioner would request that the court would grant the requested relief emodied in this motion.

The petitioner understands that the court is in a position in which it is vested with the responsibility of ensuring that the petitioner posses no threat to society. We would again iterate to the court that had not it been for these actions that were peddled by powerfully influential people and news outlets such as "FOX NEWS" that encouraged such actions on January 6, 2023 he would still be employed paying his taxes as any other hard working american citizen. If these influential individuals had not peddled such fruadulent claims he would have been there for his grandparents that both passed away on this year. In addition to this he would have been in the lives of his children both physically and finacially to support them from home. What these fraudulent claims have done to Mr. Gardner has caused him to be now known as one of the most infamous people in american history. The petitioner now realizes this and seeks to make amends to all those that became victims of his actions.

The petitioner is well aware that the 3553(a) factors must be considered by the court when deciding to grant relief under 3582(c) motions.

The law is clear in that the petitioner bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release and/or a sentence reduction pursuant to 3582(c). United States v. Smith, No. CR 9-187, 2020 U.S. Dist. LEXIS 129218, 2020 WL 4047485, at *2 (W.D. Pa. July, 20, 2020) (Citing United States v. Adeyemi, No. CR 06-124, 470 F. Supp. 3d 489, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 U.S. Dist LEXIS 158678, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, 2020 U.S. Dist. LEXIS 136053, 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 U.S. Dist. LEXIS 80368, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

18 U.S.C. § 3553 states the following as a requirement of the court when imposing a sentence:

§3553. Imposition of a sentence

(a) **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1)  the nature and circumstances of the offense and the history and
     characteristics of the defendant;

(2)  the need for the sentence imposed--

   (A)  to reflect the seriousness of the offense, to promote respect
        for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant;
        and

   (D)  to provide the defendant with needed educational or
        vocational training, medical care, or other correctional
        treatment in the most effective manner;

(3)  the kinds sentences available;

(4)  the kinds of sentence and sentencing range established for--

   (A)  the applicable category of offense committed by the
        applicable category of defendant as set forth in the
        guidelines--

      (i)  issued by the Sentencing Commission pursuant to section
           994(a)(1) of title 28, United States Code, subject to

any amendments made to such guidelines by act of
Congress (regardless of whether such amendments have yet
to be incorporated by the Sentencing Commission into
amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g) [18 USCS
§3742(g)], are in effect on the date the defendant is
sentenced; or

(B)   in the case of a violation of probation or supervised
release, the applicable guidelines or policy statements
issued by the Sentencing Commission pursuant to section
994(a)(3) of title 28, United States Code, taking into
account any amendments made to such guidelines of policy
statements by act of Congress (regardless of whether such
amendments have yet to be incorporated by the Sentencing
Commission into amendments issued under section 994(p) of
title 28);

(5)   any pertinent policy statement--

(A)   issued by the Sentencing Commission pursuant to section
994(a)(2) of title 28, United States Code, subject to any
amendments made to such policy statement by act of Congress
(regardless of whether such amendments have yet to be
incorporated by the Sentencing Commission into amendments
issued under section 994(p) of title 28); and

      (B)  that, except as provided in section 3742(g) [18 USCS §3742(g)], is in effect on the date the defendant is sentenced.[;]

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of a similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

In addition the section 3553(a) factors requires examination of these serious offenses alongside consideration of history and characteristics.  District courts must consider in deciding a motion for compassionate release and/or a modification of their sentence the 3553(a) factors as they are now, at the present time just as the court considered the 3553(a) factors at the time of the original sentencing.

Accordingly, a court must conduct an "Individualized assessment" under §3553(a) to determine a defendant's eligibility for a reduction.

The petitioner in this case does not doubt looking back at this infamous event that he participated in that certain individuals mindset was to come to the capitol and cause chaos in a manner that was intended to be violent. However, the petitioner ask the court to conduct an individualized assessment of his mind set the day this took place and in addition his mind set on today after having realized the manner in which he had been manipulated.

The petitioner can assure the court that he would never allow himself to ever again be manipulated in such a manner and intends to spend the rest of his life making a full faith effort to right this wrong and be acknowledged once again as a law abiding citizen.

***CONCLUSION***

In conclusion the petitioner request that this honorable court after considering the petition and the relief requested would grant him the reduction of sentence to time served with the remainder of his sentence to be served in home confinement or in the alternative grant him compassionate release after having found he has meet extraordinary and compelling resons. The petitioner request that should the court grant the requested relief that it would also allow him to transfer his case to the district in   which   he intends to live with his fiancee.

Respectfully Submitted,


/s/_____

    MITCHELL TODD GARDNER III
    FORT DIX - FCI
    52419-509
    P.O. BOX 2000
    JOINT BASE MDL, NJ 08640