Mitchell T. Gardner II

[redacted]

LET THIS BE FILED
Signature _Amit M____
Date 10/16/25

**United States District Court**
**For The District Of Columbia**
Honorable Amit Mehta

United States of America
    Plantiff
v.

Mitchell T. Gardner II
    Defendant

No. 1:21-cr-00622-APM

**Motion for Return of Monetary Penalties**

## Introduction

Mr Mitchell Todd Gardner II respectfully requests return of monetary penalties for restitution. Mr Gardner paid restitution of $3,500 and assessment of $270. Mr. Gardner paid this penalty prior to being pardoned for his actions on January 6 2021 at the United States Capitol building. Since he was Pardoned he would like the $3,770 returned.

## Background

Mr Gardner was charged and convicted of offenses related to protests at the Capitol on January 6, 2021. As part of his sentence, the Court ordered Mr Gardner to pay monetary penalties including a special assessment of $270 and restitution of $3,500. The judgement directed Mr Gardner to pay the assessment and restitution to the "Clerk of court for the United States, District Court for the District Court for the District of Columbia." Mr Gardner completed the monetary payments for the assessment and restitution. While in prison Mr Gardner faced economic hardship and was forced to sell his home. The $270 assessment and $3,500 restitution were collected on behalf of the court at the moment of sale of his home. On January 20th 2025 President Trump pardoned Mr Gardner and 1600 other defendants. Those defendants who had not paid their fines are now no longer required to pair their unpaid restitution. See *United States v. Stacy Wade Hager,* 21-cr-381-TSC, Dkt. 83 at 2 ('The government agrees that [defendant] is entitled to the return of [assessment and restitution] funds."); *United States v. Hector Vargas Santos,* 1:21-cr-00047-RDM, Dkt. 107 at 2 (same).

## Argument

The Court has jurisdiction over this issue, Mr Gardner's request is supported by case law, and the government has supported identical requests for similarly situated defendants, Accordingly, the Court should grant Mr Gardner's motion.

I. The Court has jurisdiction over this post-dismissal motion.

After a case is dismissed, courts retain ancillary jurisdiction in special situations to ensure that a particular case is handled in its entirety by one court and to further the principles of judicial economy. Morrow v. District of Columbia, 417 F.2d. 728, 740 (D.C. Cir. 1969). In particular, ancillary jurisdiction is appropriate where: "(1) the ancillary matter arises from the

same transaction which was the basis of the main proceeding, or arises during the course of the main proceeding, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) determination of the ancillary matter would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter can be settled to protect the integrity of the main proceeding or to ensure that the disposition in the main proceeding will not be frustrated." Id. For example, in Doe v. Webster, 606 F.2d 1226, 334 (D.C. Cir. 1979) the appellant's conviction was set aside and the trial court recognized its inherent equitable authority to expunge criminal records in appropriate cases, illustrating authority to address collateral matters, like expungement, following a vacated conviction.

Id.

Here, the Court has jurisdiction because the requested refund consists of fees and restitution assessed solely due to the vacated convictions. Applying the factors for ancillary jurisdiction, these costs are from the same transaction as the main proceeding, return can be determined without substantial new fact-finding, deciding the matter would not deprive a party of a substantial right, and resolving the application of costs would protect the integrity of the main proceeding. Morrow, 417 F.2d at 740.

II. Ms. St Cyr's monetary penalties must be refunded after her conviction was vacated, as the government has noted in similar cases.

Generally, a pardon "affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor, or otherwise; it does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it." Knote v. United States, 95 U.S. 149,

153–54 (1877). But here Knote is inapplicable because Ms. St Cyr was not simply pardoned; instead, the government moved to vacate her conviction while her appeal was pending and the D.C. Circuit granted that request, then this Court subsequently dismissed the case as moot.

In this situation, restitution and other monetary penalties must be refunded when a conviction is vacated. See Nelson v. Colorado, 581 U.S. 128, 130 (2017). The Nelson Court held, "When a criminal conviction is invalidated by a reviewing court and no retrial will occur . . . the State [is] obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction." Id. That's because, "once [a] conviction[] [is] erased, the presumption of their innocence [is] restored." Id. at 135. At that point, the state "may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions." Id. at 136. For the same reason, the government may not require the defendant to prove his innocence before issuing the refund. Because such defendants "are entitled to be presumed innocent," they "should not be saddled with any proof burden" to get their money back. Id. at 137. Accordingly, so long as a reviewing court invalidated the conviction and no retrial will occur, a defendant is entitled to a refund without any further showing. Id. at 130.

Both criteria are met here.

First, "the reviewing court," id. at 130—the D.C. Circuit—vacated Ms. St Cyr's conviction and remanded with instructions to dismiss the case as moot. See USCA Case No. 23-3174 Order of January 27, 2025. That order "invalidated" Ms. St Cyr's "criminal conviction." Nelson, 581 U.S. at 130. That's because "[f]inal judgment [was] never . . . reached on" her conviction, as "the

appeals process was terminated prematurely." United States v. Schaffer, 240 F.3d 35, 38 (D.C. Cir. 2001). Accordingly, the conviction is no longer

"established as a matter of law." Id.

That the vacatur resulted from mootness—and not some procedural or substantive defect in the trial—makes no difference. When, for example, a defendant's death moots their appeal, Nelson still requires the government to reimburse the decedent's estate. See United States v. Reynolds, 98 F.4th 62, 72, 67 n.2 (1st Cir. 2024) (observing that "[e]very circuit court to consider this question post-Nelson has reached this conclusion"); United States v. Libous, 858 F.3d 64, 69 (2d Cir. 2017) ("If Libous's conviction is to be vacated and his indictment dismissed, as our precedents require, then his estate is entitled to the return of the fine."); United States v. Ajrawat, 738 F. App'x 136, 139 (4th Cir. 2018) ("When the underlying conviction is invalidated—regardless of the reason—there is no longer any basis justifying the government's retaining funds exacted only as a result of that conviction."). True, death does not imply innocence. But under Nelson, one need not prove one's innocence in order to receive reimbursement. 581 U.S. at 137. To the contrary, the government must have a valid conviction in hand to justify retaining the defendant's money. Id. at 135–36. So too with Ms. St Cyr's pardon while her appeal was pending. It does not matter whether the pardon proved Ms. St Cyr's innocence. All that matters is that, due to mootness, "[f]inality was never reached on the legal question of [her] guilt." Schaffer, 240 F.3d at 38.

## Conclusion

Mr Gardner respectfully requests return of his monetary payments-assessment and restitution- in this case, for a total amount of $3,770.

Dated: October 7, 2025

/s/ *[signature]*
Mitchell Gardner II